| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | **CASE NO. 4:24-cr-00157-SMR** |
| **vs.** | |
| **VICTOR HUGO BARAJAS ESTRADA,** | **MOTION FOR DETENTION HEARING** |
| **Defendant.** | |

**COMES NOW** the Defendant, Victor Hugo Barajas Estrada, by and through his undersigned counsel, and for his Motion for Detention Hearing respectfully states to the Court as follows:

## INTRODUCTION

Mr. Barajas is charged with Count I: Laundering of Monetary Instruments - Concealment, in violation of 18 U.S.C. § 1956(a)(3)(B) and 2; Count II: Laundering of Monetary Instruments - Concealment, in violation of 18 U.S.C. § 1956(a)(3)(B) and 2; and Count III: Laundering of Monetary Instruments - Concealment, in violation of 18 U.S.C. § 1956(a)(3)(B) and 2. (R. Doc. 2).

Mr. Barajas waived his right to detention hearing without prejudice at his initial appearance on November 14, 2024. (R. Doc. 5). Mr. Barajas was arraigned in the above-captioned matter on November 14, 2024. (R. Doc. 5). Mr. Barajas now respectfully requests the Court schedule a detention hearing to consider the matter of his detention pending trial and, following said hearing, enter an order authorizing his pretrial release with the additional condition of electronic monitoring to ensure his compliance.

## FACTUAL BACKGROUND

The pretrial services report, authored by the U.S. Probation Office, established the

following:

- Mr. Barajas is a 39-year-old man.

- Mr. Barajas has limited criminal history. The pretrial report notes that his last offense, prior to the arrest on this offense, was nearly ten years ago, and it was for Driving While License, Denied, Suspended, Cancelled or Revoked. years ago. At that time, Mr. Barajas was 29 years old. He has an Ohio-only warrant for a failure to appear charge related to a speeding ticket in Ohio, another Driving While Suspended charge from a month before his prior one, and dismissed charges related to drug trafficking.

(R. Doc. 17).

Mr. Barajas is in federal custody. He remains on ICE detainer. He will stay on ICE detainer even if released by the federal court and will have to ask for an immigration bond. Whether he receives that immigration bond will depend on the Immigration Judge.

Mr. Barajas has lived in the United States for several years. When Mr. Barajas is placed into removal proceedings, has an excellent case for VAWA cancellation of removal, a policy designed to protect immigrant victims of domestic violence from LPR and USC family members. 8 U.S.C. § 1229b(b)(2)(A)(i)-(v).

## **LEGAL STANDARDS**

A defendant's pretrial detention is proper only when the Government "shows by clear and convincing evidence that no release condition or set of conditions will reasonably assure the safety of the community and by a preponderance of the evidence that no condition or conditions. . . will reasonably assure the defendant's appearance." United States v. Abad, 350 F.3d 793, 797 (8th Cir. 2003).

In federal cases, pretrial detention is the carefully limited exception, not the rule. See United States v. Salerno, 481 U.S. 739, 755 (1987); United States v. Orta, 760 F.2d 887, 890-91 (8th Cir. 1985). The Bail Reform Act changed the legal standard to require release if any set of conditions exists to reasonably assure a defendant's appearance in court and the safety of the community. See Orta, 760 F.2d at 891 n.14. These changes "reemphasize[d] congressional intent to preserve the statutory bias favoring pretrial release for most defendants" and "render[ed] it more difficult to find the defendant a flight and safety risk." Id. Pretrial detention is "hedged around with procedural requirements designed to limits its use to those instances when it is clearly necessary." United States v. Holloway, 781 F.2d 124, 125-26 (8th Cir. 1986).

18 U.S.C. § 3142(f) requires a district court to hold a detention hearing on the Government's motion when the alleged crime meets certain criteria under section 3142(f)(1) or on the Government's motion or the Court's own motion if the case involves a serious risk that the defendant will flee or attempt to obstruct justice under section 3142(f)(2). The district court shall order a defendant to be detained only if it finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e).

In reaching this determination, the court must consider the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence; (3) the person's history and characteristics; and (4) the nature and seriousness of the danger to any person or to the community that would be posed if the person were released. 18 U.S.C. § 3142(g). When considering the defendant's personal history and characteristics,

the court may look to the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history of substance abuse, criminal history, and record of court appearances. 18 U.S.C. § 3142(g)(3)(A). The court also considers whether the defendant was under supervision or on release for another offense when the alleged crime occurred. 18 U.S.C. § 3142(g)(3)(B).

In applying these provisions, the Government bears the burden to prove that detention is warranted. United States v. Kisling, 334 F.3d 734, 735 (8th Cir. 2003). A defendant may be detained pending trial only if the Government proves that no release condition or set of conditions exist to reasonably assure the safety of the community or the defendant's appearance at further proceedings. Id. (citing Orta, 760 F.2d at 891).

The two bases for pretrial detention – danger to the community and risk of flight – are subject to different evidentiary standards. See Orta, 760 F.2d at 891 n.20. To detain a defendant under either of these bases, the Government must prove: (1) by clear and convincing evidence that no release condition or set of conditions will reasonably assure the safety of the community; or (2) by a preponderance of the evidence that no condition or set of conditions will reasonably assure the defendant's appearance at trial. Id. The court may not detain a defendant "simply because there are no conditions of release that will 'guarantee' the defendant's appearance at trial and the safety of the community." United States v. Stenger, 536 F. Supp. 2d 1022, 1025 (S.D. Iowa 2008) (citing Orta, 760 F.2d at 889-90). A court "cannot require more than an objectively reasonable assurance of community safety and the defendant's appearance at trial." Orta, 760 F.2d at 892 (emphasis added).

## ARGUMENT

Mr. Barajas respectfully requests that he be released pending trial to supervision. He further agrees to submit to electronic monitoring. Given Mr. Barajas's personal characteristics and limited criminal history, this release plan is more than appropriate to assure Mr. Barajas's appearance at further proceedings and to assure the safety of the community.

**I. Conditions exist to reasonably assure the safety of the community.**

There is no presumption of detention under 18 U.S.C. § 3142. Mr. Barajas has limited criminal history, as noted in the pretrial services report. Mr. Barajas' most recent arrest was for a traffic driving under suspension misdemeanor charge ten years ago. (R. Doc. 17). There is no reason to believe, based upon his limited criminal history, that Mr. Barajas poses a risk to the community or that he is a flight risk.

The Court must weigh all other relevant factors to determine whether detention is appropriate. Abad, 350 F.3d at 797. These factors include the nature of the alleged offense, the weight of evidence facing a defendant, the defendant's personal history and characteristics, and the seriousness of any danger posed to the community or an individual by the defendant. Id.

The facts of the alleged offense do not give the Government the right to detain Mr. Barajas without cause. Mr. Barajas is charged with a nonviolent crime. Mr. Barajas' limited criminal history demonstrates that he poses no risk of violence to the community. For these reasons, Mr. Barajas asks the Court to find that the Government failed to meet its burden to show that no conditions exist that will reasonably assure the safety of the community.

In addition, Mr. Barajas would have a stable place to stay. His brother, Edgar Barajas, lives in the community, along with Edgar's wife, Yesenia Barrera, and their two children. All the inhabitants of Edgar's house are in the United States lawfully. Edgar has firearms in the home but is willing to move them out of the home. Edgar also has a limited criminal history of an OWI conviction, but this charge is over ten years old.

## II. Conditions exist to reasonably assure Mr. Barajas's appearance.

Mr. Barajas has not failed to appear in court proceedings. Cf. United States v. Cook, 87 F.4th 920, 925 (8th Cir. 2023) (defendant's history of failing to appear suggests risk of flight). The Court should not use Mr. Barajas's failure to pay a speeding ticket in Ohio as evidence that Mr. Barajas will fail to show up for future court dates. See United States v. Stenger, 536 F. Supp. 2d 1022, 1027 (S.D. Iowa 2008) (finding defendant posed no risk of flight, even with "a history of problems with supervision and fleeing from custody and supervision," when defendant had no history of failing to appear for trial or other court proceedings). He has never absconded from supervision. Cf. id. (defendant's history of absconding from probation for multiple years weighs heavily in favor of finding risk of flight). These factors show that he is a very low risk of nonappearance.

Generally, the risk that any defendant released before trial will fail to appear for subsequent court dates is very low. See GEORGE E. BROWNE & SUZANNE M. STRONG, BUREAU OF JUST. STAT., PRETRIAL RELEASE AND MISCONDUCT IN FEDERAL DISTRICT COURTS, FISCAL YEARS 2011-2018 1, 12 (2022) (observing that only 1% of federal defendants released pretrial failed to appear for a subsequent hearing, making failure to appear the lease common release violation). This already low risk can be reduced by imposing conditions like electronic monitoring or a curfew. With no additional evidence to suggest

that Mr. Barajas is likely to fail to appear for future court dates, the Government cannot prove that no conditions exist to reasonably assure Mr. Barajas's appearance.

Mr. Barajas's VAWA cancellation of removal case shows that Mr. Barajas is invested in lawfully staying in the United States. The incentive would be for him to continue to work through his charges and eventually be in the United States lawfully. He cannot do that if he flees back to Mexico. He understands that he must face the consequences for his charges and come through the other side rehabilitated and with a granted VAWA cancellation of removal so that this cycle will stop. His prior relationship with a U.S. citizen further shows his ties to the United States.

In addition, Mr. Barajas has ties to the community, through his brother, Edgar Barajas, who lives in the community lawfully with his wife and family. Edgar can support Mr. Barajas while Mr. Barajas is going through this case.

### III.     An ICE Hold is No Reason to Deny Release

Upon information and belief, Immigration and Customs Enforcement (ICE) has placed a hold upon Mr. Barajas should he be released from federal custody prior to trial. The undersigned anticipates that the United States Attorney will attempt to raise this ICE hold as a reason for denying Mr. Barajas's release.

An ICE hold, without more, is wholly insufficient to preclude a person from participating in a detention hearing or obtaining pretrial release under the Bail Reform Act of 1984. If not, the mere existence of an ICE hold "would effectively mean that no aliens against whom ICE places detainers could ever be released on conditions. Such a harsh result is nowhere expressed or even implied in the Bail Reform Act." United States v.

Villanueva-Martinez, 707 F. Supp. 2d 855, 858 (N.D. Iowa 2010) (quoting United States

v. Montoya-Vasquez, No. 4:08CR3174, 2009 WL 103596, at *5 (D. Neb. 2009)).

As Magistrate Judge Miller of the U.S. District Court for North Dakota has

recognized,

> [N]ot only is there nothing in the Bail Reform Act that authorizes automatic detention of alien persons pending trial—even those subject to an ICE detainer, but, to the contrary, Congress affirmatively extended to alien persons the same protections it affords citizens under the Act—save for the provision for temporary detention. These protections include the opportunity for: (1) an individualized determination of release or detention; (2) by a judicial officer; and (3) a determination of release or detention based upon consideration of the 18 U.S.C. § 3142(g) factors. In other words, the court would violate the Bail Reform Act if it detained defendant based only on the fact he is as alien and ICE has filed a detainer.
>
> These conclusions are by no means novel. A number of courts have similarly concluded that the Government's ICE-detainer argument is at odds with the plain text of the Bail Reform Act, including several sister courts within the Eighth Circuit. See, e.g., United States v. Resendiz-Guevara, 145 F. Supp. 3d 1128, 1133-34 (M.D. Fla. 2015) ("Resendiz-Guevara"); United States v. Stepanyan, No. 3:15–cr–00234, 2015 WL 4498572, at *3 (N.D. Cal. July 13, 2015) ("Stepanyan"); United States v. Tapia, 924 F. Supp. 2d 1093, 1097-98 (D.S.D. 2013) (citing numerous cases); United States v. Trujillo-Alvarez, 900 F. Supp. 2d 1167, 1174 (D. Ore 2012) ("Trujillo-Alvarez") ("In promulgating the BRA, 'Congress chose not to exclude deportable aliens from consideration for release or detention in criminal proceedings.' ") (quoting United States v. Adomako, 150 F. Supp. 2d 1302, 1304 (M.D. Fla. 2001)); Barrera-Omana, 638 F. Supp. 2d at 1111 (D. Minn.); United States v. Montoya–Vasquez, No. 4:08–CR–3174, 2009 WL 103596, at * *3-6 (D. Neb. Jan. 13, 2009).

United States v. Brown, No. 4-15-cr-102, 2017 WL 3310689, *4–5 (D. N.D. 2017)

(footnote omitted). Judge Miller's conclusion was built on sound reasoning. Rather than

attempt to paraphrase the opinion, other portions should be set out in full:

> [T]he Bail Reform Act requires that persons charged with a federal crime be given (1) an individualized determination of release or detention by (2) a judicial officer who (3) is required to consider and weigh the factors set forth in § 3142(g). Here, the Government's argument, that defendant must be

detained in order to ensure his attendance at trial because ICE will take him into administrative custody pursuant to its detainer and process him for removal if released, effectively denies him these statutory protections. That is, there would be no individualized determination of release or detention based upon consideration of the § 3142(g) factors because the ICE detainer and the fact ICE may process him for removal would control. Also, there would be no meaningful independent judicial determination; rather, the decision as to release or detention effectively becomes ICE's, particularly if, as discussed later, the Executive Branch has some discretion in the matter. See, e.g., United States v. Barrera-Omana, 638 F. Supp. 2d 1108, 1111 (D. Minn. 2009) ("Barrera-Omana") ("If the Court accepted the government's argument, Congress's carefully crafted detention plan, set forth at 18 U.S.C. § 3142, would simply be overruled by an ICE detainer. No other factor matters; neither danger to the community nor risk of flight, nor any kind of individualized consideration of a person before the Court. Each, according to the government, has been swallowed by an ICE detainer.").

Is this what the Bail Reform Act contemplates? The court thinks not for several reasons. First, in instructing courts to release defendants pending trial unless the Government can demonstrate certain things, the Bail Reform Act refers to a defendant as "person" without distinguishment as to whether the person is a United States citizen, resident alien, visa holder, or an alien with no temporary or permanent immigration status. Second, there is no provision which expressly states that alien persons must be detained, even one subject to an ICE detainer. In fact, 18 U.S.C. § 3142(g) does not even mention a defendant's alienage or whether there is an ICE detainer, much less make them presumptive factors.

Id. at *3.

Finally, Judge Miller rejected the argument that Congress has given the executive branch irreconcilable commands in (1) releasing an alien unless it can demonstrate grounds under the Bail Reform Act, and (2) requiring administrative custody of an alien and deportation under immigration laws. Id. at *5. Primarily, there is no irreconcilable conflict because ICE has been delegated discretion to grant a stay or deferral of removal if requested by government prosecutors. Id. Hence, "the presence of an ICE-detainer is not conclusive." Id.

"[D]espite all of its arm-waving about ICE proceeding to remove the defendant, the Government has not bothered to cite to one federal statute or regulation that it contends requires ICE to remove [the defendant] with no exceptions and his criminal prosecution be damned." Id. at *6 (emphasis in original).

> In making this argument, does the Government really expect this court to believe that, after the Department of Justice has spent almost two years and considerable resources (both locally and at main Justice) to effectuate the extradition of the defendant and a number of his co-defendants in this high-profile criminal prosecution, the Department of Homeland Security would simply thumb its nose at Justice and remove defendant? But, even if this was a run-of-the-mill case of an alien who is already in this country and charged with having committed a federal offense, the undersigned would reject the Government's argument for the reason best articulated by a sister-court within the Eighth Circuit:

> The problem here is not that defendant will absent himself from the jurisdiction, but that two Article II agencies will not coordinate their respective efforts. The Executive, in the person of the Attorney General, wishes to prosecute defendant. The same Executive, in the person of the Assistant Secretary of Homeland Security for ICE, may want to deport him. It is not appropriate for an Article III judge to resolve Executive Branch turf battles. The Constitution empowers this Court to apply the will of Congress upon a criminal defendant on a personal and individualized basis. This Court ought not run interference for the prosecuting arm of the government.

Id. at *6 (emphasis added) (quoting United States v. Barrera-Omana, 638 F. Supp. 2d 1108, 1111–12 (D. Minn. 2009)).

The Eighth Circuit has followed, holding that a defendant could be held in removal proceedings even though he had been released from his federal criminal detention, as "[t]he BRA and INA can coexist" because "the BRA does not have any clearly expressed intention to subordinate the INA." United States v. Pacheco-Poo, 952 F.3d 950, 952 (8th Cir. 2020). In Pacheco-Poo, the magistrate ordered release despite the presence of an

ICE detainer and the Eighth Circuit made clear that the government is free to remove a defendant on pretrial release while proceeding with a criminal case

> The BRA requires a "judicial officer" to detain a defendant pretrial if "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). The INA requires the "Attorney General" to remove aliens from the United States. See, e.g., 8 U.S.C. §§ 1231(a)(1)(A), (a)(5).
>
> The BRA and INA co-exist. "The courts are not at liberty to pick and choose among congressional enactments, and when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." Morton v. Mancari, 417 U.S. 535, 551, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974). The BRA and INA regulate different entities and functions. The BRA regulates a judicial officer's pretrial release of federal criminal defendants. The INA governs the Attorney General's removal of aliens. See United States v. Lett, 944 F.3d 467, 470 (2d Cir. 2019) ("The BRA and the INA thus serve different purposes, govern separate adjudicatory proceedings, and provide independent statutory bases for detention."). Further, the BRA does not have any clearly expressed intention to subordinate the INA. See United States v. Vasquez-Benitez, 919 F.3d 546, 553 (D.C. Cir. 2019) ("The Congress has never indicated that the BRA is intended to displace the INA."). See generally United States v. Soriano Nunez, 928 F.3d 240, 240 (3d Cir. 2019); United States v. Veloz-Alonso, 910 F.3d 266 (6th Cir. 2018).

United States v. Pacheco-Poo, 952 F. 3d 950, 952 (8th Cir. 2020).

The Ninth Circuit also addressed the issue in United States v. Santos-Flores, 794 F.3d 1088 (9th Cir. 2015). The Ninth Circuit pointed out that immigration status is not listed as a factor to be considered under § 3142(g), and "alienage may be taken into account, but it is not dispositive." Santos-Flores, 794 F.3d at 1090. The factors themselves make clear, therefore, that "Congress chose not to exclude removable aliens from consideration for release or detention in criminal proceedings." Id.

> As a number of district courts have persuasively explained, the risk of nonappearance referenced in 18 U.S.C. § 3142 must involve an element of volition. See, e.g., United States v. Trujillo–Alvarez, 900 F.Supp.2d 1167,

1176–78 (D.Or.2012) (citing cases). If the government, by placing Santos–Flores in immigration detention or removing him, jeopardizes the district court's ability to try him, then the district court may craft an appropriate remedy. See id. at 1179–81. The court may not, however, substitute a categorical denial of bail for the individualized evaluation required by the Bail Reform Act. 18 U.S.C. § 3142(e), (g); see also Lopez–Valenzuela, 770 F.3d at 791.

We conclude that the district court erred in relying on the existence of an ICE detainer and the probability of Santos–Flores's immigration detention and removal from the United States to find that no condition or combination of conditions will reasonably assure Santos–Flores's appearance pursuant to 18 U.S.C. § 3142(e).

Id. at 1091–92.

Similarly, the Tenth Circuit held that "a risk of involuntary removal does not establish a 'serious risk that [the defendant] will flee' upon which pre-trial detention may be based." United States v. Ailon-Ailon, 875 F.3d 1337 (10th Cir. 2017) (quoting § 3142(f)(2)(A)). Accordingly, a defendant is not barred from release because he is a deportable alien with an ICE hold. Id. "[U]nder the government's construction, the Act's 'carefully crafted detention plan' would simply be overruled by an ICE detainer,' precluding 'any kind of individualized consideration of a person before the Court." Id. at 1338. Importantly, the Tenth Circuit here quoted directly from the same District Court of Minnesota opinion, Barrera-Omaha, that Judge Miller relied upon. The Tenth Circuit has continued to hold the defendant's immigration status is not a factor to be considered under the BRA. United States v. Barrera-Landa, 964 F. 3d 912 (10th Cir. 2020).

The 3rd Circuit, citing Ailon-Ailon, agreed in a different context, stating:

(1) the BRA explicitly applies only to federal criminal proceedings, not state or immigration proceedings, (2) there is no textual conflict between the BRA and the INA, (3) these statutes serve different purposes, and (4) criminal and removal processes can proceed simultaneously, the District Court

correctly declined to hold that Soriano Nunez's BRA release order mandated her release from ICE detention

United States v. Soriano Nunez, 928 F. 3d 240, 247 (3rd Cir. 2019) (cleaned up).

More and more circuits have held that the two acts are reconcilable, and the government may release under the BRA while also recognizing the defendant may be detained by ICE. See, e.g., United States v. Lett, 944 F. 3d 467, 471 (2nd Cir. 2019); United States v. Vasquez-Benitez, 919 F.3d 546, 553-54 (D.C. Cir. 2019); United States v. Baltazar-Sebastian, 990 F. 3d 939, 941 (5th Cir. 2021); United States v. Veloz-Alonso, 910 F.3d 266, 270 (6th Cir. 2018)

In sum, Mr. Barajas's immigration status is really no factor to consider whatsoever at the detention hearing. Mr. Barajas's detention should be determined by the factors set out in the Bail Reform Act.

## **CONCLUSION**

Pretrial detention is an "exceptional step" that should be reserved for only the most dangerous offenders. United States v. Torres, 929 F.2d 291, 292 (7th Cir. 1991); see also United States v. Warren, 787 F.2d 1237, 1239 (8th Cir. 1986) (McMillian, J., dissenting) ("Pre-trial detention is an extreme measure which, at least in my view, has been sought by the government too frequently and has been imposed by the district courts too readily."). The Government will fail to show that this "exceptional step" needs to be taken in Mr. Barajas's case. The Government will not show that there is no set of conditions that would reasonably assure Mr. Barajas's presence at hearings and the safety of the community. For the above reasons, Mr. Barajas respectfully requests that the Court grant order his release pending trial.

**WHEREFORE,** the Defendant, Victor Hugo Barajas Estrada, respectfully requests this Court schedule a detention hearing in the above-captioned matter and, after such a hearing, order his pretrial release with conditions and grant any other relief that is just and equitable under the present circumstances.

**PARRISH KRUIDENIER, L.L.P.**

BY: ___*/s/ Benjamin D. Bergmann*_____

Benjamin D. Bergmann     AT0009469
2910 Grand Avenue
Des Moines, Iowa 50312
Phone: 515.284.5737
Fax: 515.284.1704
Email: bbergmann@parrishlaw.com
**ATTORNEY FOR DEFENDANT**

**PROOF OF SERVICE**

The undersigned certifies that the foregoing instrument was **electronically filed** using the CM/ECF system on January 28, 2025.

_____*/s/ Jennifer Weston*_____

**COPIES TO:**
U.S. Attorney's Office
**ATTORNEY FOR PLAINTIFF**

Mr. Victor Hugo Barajas Estrada
**DEFENDANT**